1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **WAY QUO LONG,**<br><br>                    **Petitioner,**<br><br>     **v.**<br><br>**UNITED STATES OF AMERICA,**<br><br>                    **RESPONDENT.** | **1:96-cr-05135-OWW**<br><br>**MEMORANDUM DECISION AND ORDER DENYING SECTION 22555 PETITION** |

### I. <u>INTRODUCTION</u>.

Way Quoe Long ("Petitioner") proceeds with a motion to vacate his conviction pursuant to 28 U.S.C. 2255. Petitioner filed his original petition on February 2, 2004. (Doc. 158). Petitioner filed an amended motion on October 28, 2004. (Doc. 168). The United States filed opposition to Petitioner's motion on September 14, 2005. (Doc. 182). The United States filed supplemental opposition on September 25, 2005. (Doc. 183). Petitioner filed replies to the United States opposition on December 29, 2005. (Docs. 188, 189).

### II. <u>FACTUAL BACKGROUND</u>.

In July 1997, a jury found Petitioner guilty of engaging in a continuing criminal enterprise; conspiracy to manufacture, distribute, and posses with intent to distribute marijuana; two

**1**

counts of manufacturing marijuana and aiding and abetting; and several federal firearms offenses including possession of a machine gun, assault rifle, and silencer.[1]   The continuing criminal enterprise Petitioner was convicted for was a marijuana growing and selling operation.   According to evidence adduced at trial, Petitioner was involved with the cultivation and distribution of marijuana produced at several grow sites located in Fresno County, California.   Witness testimony, receipts, property, and phone numbers tied to Petitioner were used to link Petitioner to the continuing criminal enterprise. Petitioner's conviction was affirmed on appeal at *United States v. Long*, 301 F.3d 1095 (9th Cir. 2002); many of the claims asserted in the instant petition have already been rejected by the Ninth Circuit.

### III. **LEGAL STANDARD**.

Federal prisoners may file motions to vacate, set aside, or correct a sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Where the petitioner does not allege lack of jurisdiction or constitutional error, relief under section 2255 is inappropriate unless the alleged error resulted in a "complete miscarriage of justice or in a proceeding inconsistent with the rudimentary demands of fair procedure." *Hamilton v. United States*, 67 F.3d 761,

---

[1] A detailed factual history is set forth in the order denying Petitioner's motion for discovery.  (Doc. 167).

763-64 (9th Cir. 1995). "[R]elief is not available merely because of error that may have justified reversal on direct appeal." *United States v. Frady*, 456 U.S. 152, 165, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982); *United States v. Addonizio*, 442 U.S. 178, 184, 99 S. Ct. 2235, 60 L. Ed. 2d 805 (1979). A court deciding a motion under section 2255 is not required to hold an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

### IV. DISCUSSION.

**A. Ineffective Assistance of Counsel Claims**

In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. *Strickland*, 466 U.S. at 688; *United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential and there exists a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 687; *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994).

Second, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result...would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient

**3**

to undermine confidence in the outcome." *Quintero-Barraza*, 78 F.3d at 1348 (quoting *Strickland*, 466 U.S. at 694). A court evaluating an ineffective assistance of counsel claim does not need to address both components of the test if the petitioner cannot sufficiently prove one of them. *Strickland*, 466 at 697; *Thomas v. Borg*, 159 F.3d 1147, 1151-52 (9th Cir. 1998).

### 1. Plea Bargain Claim

Failure to convey a plea bargain may constitute ineffective assistance of counsel. *See, e.g.*, *Nunes v. Mueller*, 350 F.3d 1045, 1056 (9th Cir. 2003) (affirming grant of habeas relief were petitioner was prejudiced by counsel's failure to accurately convey plea bargain); *see also Perez v. Rosario*, 449 F.3d 954, 957 (9th Cir. 2006). In order to establish ineffective assistance with respect to a plea bargain, a petitioner must show that his counsel's advice during the plea bargaining process "fell below an objective standard of reasonableness." *Id.* (quoting *Strickland*).

Petitioner contends that his trial counsel was constitutionally deficient if she failed to inform him of pre-trial plea bargains offered by the Government. Petitioner presents no evidence that the Government ever offered a plea bargain that was not conveyed by trial counsel. Rather, Petitioner speculates that because the Government allegedly offered him a plea bargain during his appeal, the Government also might have offered him a plea bargain before and/or during trial that was not conveyed to him. Petitioner's unsupported speculation is insufficient to establish entitlement to relief under section 2255. *E.g., Farrow v. United States*, 580 F.2d 1339, 1355 (9th Cir. 1978) (section 2255 petitioner must prove ineffective assistance of counsel by preponderance of the

**4**

evidence); *accord United States v. Ruelas*, 2010 U.S. Dist. LEXIS 113157 * 6 (C.D. Cal. 2010) (applying preponderance standard in section 2255 action); *Trigilio v. United States,* 2010 U.S. Dist. LEXIS 32684 * 4-5 (C.D. Cal. 2010) (same); *see also   Finley v. United States*, 2008 U.S. Dist. LEXIS 107006 * 18 (E.D. Cal. 2008) (citing *Hearn v. United States*, 194 F.2d 647, 649 (7th Cir. 1952) for the proposition that section 2255 actions are subject to preponderance standard).   *Inter alia*, Petitioner has not presented any admissible evidence to suggest that his counsel failed to convey a plea bargain offered to Petitioner.[2]

## 2. Prosecutorial Misconduct Claims

Petitioner asserts that his trial counsel was ineffective for failing to object to several instances of prosecutorial misconduct. In order to satisfy the prejudice prong of his ineffective assistance of counsel claims, Petitioner must establish a reasonable probability that trial counsel's motions concerning prosecutorial misconduct would have been successful. *E.g., Styers v. Schriro*, 547 F.3d 1026, 1030 (9th Cir. 2008).   Prosecutorial misconduct requires a mistrial if the prosecutor's conduct so infected the trial with unfairness that proceeding would violate due process.   *See, e.g., Darden v. Wainwright*, 477 U.S. 168, 181

---

[2] Although it is not necessary to reach the prejudice inquiry because Petitioner has not alleged a prima facie case of ineffective assistance of counsel concerning a plea bargain, the court notes that Petitioner alleges that he turned down a highly favorable plea bargain even after he was convicted by a jury, which belies any notion that he would have accepted a plea bargain before trial. (Amd. Pet. at 12) (alleging petitioner rejected three-year, time served plea bargain during appeal).   Petitioner has not established prejudice, as his allegations do not suggest a reasonable probability that he would have accepted a plea bargain prior to trial. *See, e.g., United States v. Tillisy*, 407 Fed. Appx. 246, 247-48 (9th Cir. 2011) (rejecting ineffective assistance of counsel claim related to plea bargain where petitioner did not establish that he would have accepted plea offer).

(1986); *Drayden v. White*, 232 F.3d 704, 713 (9th Cir. 2000).

### a. Failure to Object to Alleged Subornation of Perjury

Petitioner contends that his trial counsel was ineffective for failing to object to the Prosecution's alleged subornation of perjury during trial. Petitioner alleges that the Prosecution suborned perjury by placing Khamsouk Vongphachanh on the witness stand, who testified that marijuana at the Lincon/West grow site belonged to Petitioner.[3]  Petitioner contends that two individuals interviewed during the Government's investigation–Noumane "Tom" Sayavong and Chai Prasop– gave statements that were at "loggerheads" with Vongphachanh's testimony. (Amd. Pet. at 15).

Specifically, Petitioner notes that (1) Sayavong told the Prosecution during an interview that he and Petitioner had purchased marijuana from the Lincoln/West grow site from Vongphachan, and (2) Prasop told the Prosecution in an interview that Petitioner wanted to steal Vongpachonh's marjiuana crop from the Lincoln/West grow site.  Petitioner contends that, in light of these statements, the Prosecution could not have believed Vongphachanhn's testimony to be true, because Prasop and Savayong's statements suggest that Petitioner did not control the grow site but was instead buying marijuana from the site's true owners and wanted to steal the crop.  The Court of Appeal has already decided that Vongpachonh's testimony was properly considered. *Long*, 301 F.3d at 307.

---

[3] Petitioner also contends trial counsel was ineffective for "failing to make the court and jury aware of Vongphachahn's perjury," however, Petitioner's own allegations confirm that trial counsel addressed the discrepancies Petitioner complains of in her closing argument.  (Amd. Pet. at 6).

Petitioner's allegations do not suggest prosecutorial misconduct, as mere inconsistencies among various witness' testimony are insufficient to support an inference of knowing subornation of perjury. *See, e.g., United States v. Nelson*, 2009 U.S. Dist. LEXIS 105437 * 9-10 (D. Idaho 2009) (rejecting perjury allegations based solely on inconsistencies in testimony of witnesses offered by the prosecution at trial). The fact that the Prosecution chose to accept Vongpachonh's version of the facts regarding the Lincoln/West grow site instead of Prasop's and Savayong's does not support an inference that the Prosecution suborned perjury.

Petitioner's claim is deficient because, *inter alia*, he has not established by admissible evidence that any witness committed perjury, much less that the prosecution *knowingly* elicited perjury during trial. Absent such a showing, Petitioner cannot establish a reasonable likelihood that a motion by his trial counsel asserting subornation of perjury would have prevailed. *See, e.g.*, *Morales v. Woodford*, 388 F.3d 1159, 1179 (9th Cir. 2003) (discussing showing required to prevail on subornation of perjury allegation). "A bare allegation that false or perjured testimony was introduced, without a showing that the prosecution knew of its falsehood, is not sufficient for relief." *Cochran v. Kramer*, 2010 U.S. Dist. LEXIS 12474 * 33-34 (E.D. Cal. 2010) (citing *Woodford*, 336 F.3d at 1152). There is no reasonable probability that, had Petitioner's trial counsel asserted prosecutorial misconduct at trial based on alleged subornation of perjury, Petitioner would have received a more favorable outcome.

**7**

### b.  Failure to Object to Alleged Misconduct During Opening Statement

It is misconduct for a prosecutor to refer to the testimony of a witness in an opening statement where the prosecutor knows the witness will not be called to testify at trial.  See, e.g., *Hill v. Uribe*, 2010 U.S. Dist. LEXIS 141036 * 68 (S.D. Cal. 2010) (adjudicating misconduct claim).  In determining whether a prosecutor's opening statement warrants a mistrial, a court must determine "whether the prosecutor's remarks were improper and, if so, whether they infected the trial with unfairness." *Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir.2005).

Petitioner contends that the Prosecution represented during its opening statement that it would call Prasop and offered a "damming summation of Prasop's proposed testimony." (Amd. Pet. at 18-19).  At trial, the Prosecution represented that Prasop was no longer willing to testify because he had received a threatening letter.  Petitioner speculates that the Prosecution's representation was false, but presents no competent evidence of this bald assertion.

After the Prosecution notified the court of Prasop's unwillingness to testify, the court held a hearing at which the threatening letter was produced.  In light of the fact that the threatening letter was produced by the Prosecution and reviewed by the court, there was no reasonable basis for Petitioner's trial counsel to assert prosecutorial misconduct after the Prosecutor presented evidence that Prasop had been threatened and was thereafter unwilling to testify.  Further, there is no reasonable probability that, had Petitioner's trial counsel asserted a claim

**8**

of prosecutorial misconduct when the Prosecution notified the court that Prasop was unwilling to testify, Petitioner would have received a more favorable outcome.[4]   Absent such a showing, Petitioner cannot establish he was prejudiced by counsel's failure to move for a mistrial. *Styers*, 547 F.3d at 1030.   The jury was admonished at the commencement and conclusion of trial that statements made by attorneys during the course of the trial are not evidence.   In light of the totality of the circumstances, there is no reasonable probability that a motion for mistrial would have been granted because, as a general matter, curative instructions prevent the trial from being so "infected with unfairness" that a mistrial is required. *See, e.g., Tan*, 413 F.3d at 112 (rejecting unfairness claim in light of curative instructions).

### 3. Failure to Advance Motions for Directed Verdicts

#### a. 21 U.S.C. § 848

Petitioner contends that trial counsel rendered ineffective assistance by failing to move for judgments of acquittal on certain charges pursuant to Federal Rule of Criminal Procedure 29.   In considering a motion for judgment of acquittal, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Alarcon-Simi*, 300 F.3d 1172, 1176 (9th

---

[4] In this section of his amended petition, Petitioner also alleges that the prosecution vouched for law enforcement witnesses during opening statement. Petitioner cannot establish prejudice in light of the evidence presented at trial and the trial court's curative instructions that attorney statements are not evidence. *See, e.g., Tan*, 413 F.3d at 112 (rejecting unfairness claim in light of curative instructions).

**9**

Cir. 2002).

First, Petitioner contends counsel should have moved for a judgment of acquittal on Petitioner's operation of a continuing criminal enterprise under 21 U.S.C. § 848. Petitioner cannot establish that he suffered prejudice, as there is no reasonable probability that a motion for directed verdict would have succeeded. *Styers*, 547 F.3d at 1030. The Ninth Circuit rejected Petitioner's claim that their was insufficient evidence to support his conviction under section 848:

> The evidence was sufficient to support Long's [continuing criminal enterprise] conviction. First, we have already determined that Vongprachanh's testimony was correctly considered. Second, the record clearly demonstrates that Long was responsible in some managerial or organizational capacity for the marijuana growing which involved five or more persons. That is sufficient to satisfy the broad "organizer, a supervisory position, or any other position of management" language of 21 U.S.C. § 848(c)(2)(A). *United States v. Hernandez-Escarsega*, 886 F.2d 1560, 1570-71 (9th Cir. 1989)...[I]t is proper to rely on Title 21 conspiracies to establish CCE violations. Therefore, the conspiracy plus the two marijuana counts comprise the three substantive counts.

*Long*, 301 F.3d at 1107. In light of the Ninth Circuit's finding that sufficient evidence existed to support Petitioner's conviction under section 848, Petitioner cannot establish he was prejudiced by counsel's decision not to seek a directed verdict. A motion for judgement of acquittal would have been denied because sufficient evidence existed to permit the a rational jury to find Petitioner guilty of the offense. *Id*.

In a related contention, Petitioner contends that counsel was ineffective for failing to object to the jury instructions on section 848. The Ninth Circuit rejected Petitioner's claim of

**10**

instructional error on direct appeal. *See id*. Accordingly, there is no reasonable probability that Petitioner was prejudiced by his counsel's failure to object to the section 848 instructions.

### b. East Clay

Petitioner claims that trial counsel should have moved for a directed verdict on Petitioner's involvement with the East Clay grow site because there was insufficient evidence to link him to the site. As Petitioner conceded, evidence at trial demonstrated that Petitioner's wife lived at the East Clay property. Further, Sayavong testified that he visited Petitioner at the East Clay property at a time when Petitioner was living there, and that he saw 250 to 300 marijuana plants at the property. (RT at 1874-76). As this evidence was sufficient to permit a rational jury to find that Petitioner was responsible for the East Clay grow site, a motion for judgment of acquittal could not have prevailed. *E.g., Alarcon-Simi*, 300 F.3d at 1176 (discussing standard).

### 4. Failure to Investigate Claims

Although there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," counsel must, at a minimum, conduct a reasonable investigation enabling him to make informed decisions about how best to represent his client. *See, e.g., Sanders*, 21 F.3d at 1457; *Raley v. Ylst*, 470 F.3d 792, 800-801 (9th Cir. 2006). Reasonable professional judgments can support limitations on investigation. *E.g., Strickland*, 466 U.S. at 690-91.

///

### a. Witnesses

A sufficient investigation into a defendant's case requires reasonable investigation of potential witnesses, *e.g., United States v. Murillo,* 269 Fed. Appx. 705, 706-07 (9th Cir. 2008) (finding investigation reasonable where attorney investigated all four potential alibi witnesses named by Defendant), but counsel need not interview every conceivable witness for an investigation to be deemed reasonable, *see Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir. 2001) *amended decision reported at* 2001 U.S. App. LEXIS 12391. In order to prevail on a failure to investigate claim concerning counsel's investigation of potential witnesses, a petitioner must establish not only that witnesses would have been discovered, but also the nature of the witnesses' testimony. "Speculation about what [a witness] could have said is not enough to establish prejudice." *See Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997).

Petitioner contends trial counsel was ineffective for failing to interview Petitioner's wife, Petitioner's family members, and Petitioner's neighbors. Petitioner contends that these individuals would have testified that Petitioner was not living at the Clay Street grow site and did not own the marijuana crop found there.[5] Petitioner failed to submit any evidence substantiating his allegations regarding to what facts his wife, neighbors, and family members would have testified. Absent such evidence, Petitioner cannot meet his burden of establishing he was prejudiced by

---

[5] Petitioner's wife swore under oath that the marijuana found at the Clay Street grow site was planted by Petitioner. *United States v. Khong Douangboupha*, CR.F. 96-5282 OWW.

**12**

counsel's alleged deficient performance. *E.g., Grisby*, 130 F.3d at 373.  Further, Petitioner cannot establish a reasonable probability that the jury would have credited the testimony of his friends and family members in light of the contrary physical and testimonial evidence linking Plaintiff to the East Clay site.

### b. Stoner Rifle Receipt

Petitioner contends that trial counsel was ineffective for failing to investigate the authenticity of a sales receipt for a Stoner rifle seized during a raid of the McKinley/Monroe grow site.  At trial, the Stoner rifle and the purchase receipt were offered as evidence linking Plaintiff to the McKinley/Monroe grow site at trial.   The Stoner rifle receipt contained a handwritten pager number that was linked to Petitioner.  Petitioner argues that discrepancies in testimony regarding the discovery of the receipt and an incomplete chain of custody for the receipt suggest that the government fabricated the receipt in order to frame Petitioner.

Assuming *arguendo* that, had trial counsel conducted a more thorough investigation into the receipt's authenticity, she could have presented evidence that the receipt was not authentic, there is no reasonable probability that Petitioner would have received a more favorable outcome at trial.   As Petitioner acknowledges, the owner of the store that sold the Stoner Rifle, Demitrio Nagtalon, testified that he sold Petitioner the rifle.   Nagtalon gave eyewitness testimony that he recognized Petitioner as the purchaser of the Stoner rifle.  Sayavong also testified that Petitioner owned the Stoner rifle.   As the Ninth Circuit noted in rejecting Petitioner's appeal on the same issue, "Sayavong's testimony was

**13**

sufficient, if believed, to support a jury verdict that [Petitioner] had carried the [Stoner rifle and another weapon] to the scene of the crime." *Long*, 301 F.3d at 1106 . Even absent the receipt, witness direct testimony linked Petitioner to the Stoner Rifle found at the McKinley/Monroe grow site.

### 5. Advising Petitioner Not to Testify

Petitioner contends trial counsel rendered ineffective assistance of counsel by advising Petitioner he should not testify at trial. Petitioner has not established that counsel's decision was unreasonable. Although Petitioner advances the conclusory statement that he would have "point[ed] out all the lies testified to by the government's witnesses," (Amd. Pet. at 32), Petitioner presents little–if any–competent testimony. It appears that the gravamen of Petitioner's testimony would have been that he is innocent, and that he believes he was framed by authorities. It is highly unlikely that Petitioner's testimony would have persuaded the jury in light of the evidence adduced at trial, and counsel's decision to advise Petitioner not to testify constitutes an informed strategic decision that is virtually unchallengeable. *Strickland*, 466 U.S. at 690.

Petitioner contends counsel threatened to withdraw from his defense if he insisted on testifying. Petitioner presents no competent evidence of his assertion. There is no declaration from counsel. Assuming *arguendo* Petitioner's allegation is true, and to the extent Petitioner seeks to assert an independent claim for denial of the right to testify, counsel's alleged threat to discontinue representation is insufficient to amount to a denial of

**14**

the right to testify. *See, e.g., United States v. Swisher*, 2011 U.S. Dist. LEXIS 39135 *29-30 (D. Idaho 2011). "Although the ultimate decision whether to testify rests with the defendant, he is presumed to assent to his attorney's tactical decision not to have him testify." *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993). A defendant's "silence" after his attorney decides not to call him as a witness implies that he has waived the right to testify on his own behalf. *See United States v. Pino-Noriega*, 189 F.3d 1089, 1095 (9th Cir.) *cert. denied*, 528 U.S. 989 (1999).

### 6. Jury Issues

The jury initially returned inconsistent verdicts with respect to Count 6 of Petitioner's indictment. The verdict form for Count 6 reflected a "not guilty" finding for violation of 18 U.S.C. 924(c)(1), using and carrying a firearm during a drug trafficking offense. However, the verdict form also reflected the jury's findings on subparts A-C of Count 6 that Petitioner was guilty of using and carrying three specific firearms in connection with a drug trafficking offense. (RT at 3374-75). The court called a sidebar and advised counsel of his intent to send the jury back to the jury room to resolve the inconsistency; counsel assented. After further deliberation, the jury found Petitioner guilty of Count 6 and all three subparts.[6]

///

---

[6] Petitioner attempts to distort the record, contending that "the Court...announced it was making a finding of its own with respect to Count 6." (Pet. at 41). Petitioner further contends that no sidebar occurred, and that the court reporter manufactured the transcription of the sidebar and other portions of the proceeding. These are unsupported and uncorroborated falsehoods contradicted by the record of proceedings.

Petitioner contends his trial counsel should have objected to the court's treatment of the inconsistent verdicts. As an initial matter, Petitioner's claim is devoid of merit because trial counsel did in fact move for a mistrial due to the circumstances surrounding the jury's verdict on Count 6. (RT at 3383). More importantly, Petitioner cannot establish prejudice, as there was no meritorious basis for objecting to sending the jurors back to the jury room to resolve an obvious inconsistency. As the Ninth Circuit concluded in rejecting a similar claim advanced by Petitioner on his prior appeal:

> Defense counsel requested that the district court vacate the verdict and send the jury back to re-deliberate or declare a mistrial. The district court denied both. The district court confirmed with Jurors 7 and 8 that their guilty verdicts were true, and that the jurors were speaking freely and voluntarily without feeling pressured.
>
> The district court then sent all the jurors back to the jury room to see if there were any further questions and whether they needed any further instructions as to the existing counts. When the jury came back, the court polled the jury once again and scheduled another day to reconvene. The district court did not err with its polling procedures and appropriately dealt with the questions of Jurors 7 and 8. The district court took great pains to make sure that the jurors' verdicts were true and that they did not feel pressured by the district court or anyone else.

*Long*, 301 F.3d at 1104.

Petitioner also claims that counsel erred by objecting to the removal of two allegedly biased jurors. The Ninth Circuit has already rejected Petitioner's contention that jurors in question tainted his conviction:

> We review for abuse of discretion because the district court has the discretion to determine whether jurors are

**16**

telling the truth, whether they can proceed fairly, and whether they should be excused or replaced. So long as the district court believes that jurors are able to proceed fairly, it does not have to publish particularized findings of fact.

The district court did not abuse its discretion. First, the district court carefully interviewed both jurors separately, both outside and in the presence of counsel. [*1102]   Second, the district court focused on whether the jurors had kept open minds, whether they could deliberate with each other, and whether the alleged misconduct would affect their deliberations with the other ten jurors.

*Long,* 301 F.3d at 1101-02.

Finally, Petitioner contends that counsel should have objected to the court's instructions concerning conspiracy liability. Petitioner's substantive claim concerning the conspiracy instruction was also rejected by the Ninth Circuit, which held that Petitioner cannot show that any error concerning the Ninth Circuit model Pinkerton instruction affected substantial rights or caused prejudice to his case.  *Id.* at 1104.

Petitioner has no meritorious claim of ineffective assistance concerning any of the jury issues about which Petitioner complains. Nor can Petitioner establish prejudice.

### 7. Failure to File Suppression Motions

#### a. Trimmer Springs

Petitioner contends trial counsel was ineffective for failing to achieve suppression of evidence obtained from the search of a 25-acre parcel of rural property in Trimmer Springs.  Petitioner has not demonstrated counsel was deficient in challenging the Trimmer Springs search.   Nor has Petitioner established any

**17**

reasonable probability that he was prejudiced by counsel's treatment of the issue.   It is unclear what legitimate privacy interest Plaintiff purports to have at the Trimmer Springs location.  *See Oliver v. United States*, 466 U.S. 170, 179 (1984) (cultivation of marijuana in "open fields" not an intimate activity of the home entitled to Fourth Amendment protection).  To decide whether land is curtilage or an open field, a court must examine four factors:

> The proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.

*United States v. Van Damme*, 48 F.3d 461, 464 (9th Cir. 1995).  When analyzing the nature of the uses to which the area in question is put, the Supreme Court has found it "especially significant that the law enforcement officials possessed objective data indicating that the [area] was not being used for intimate activities of  the home." *United States v. Davis*, 530 F.3d 1069 (citing *United States v. Dunn*, 480 U.S. 294, 302 (1987)).

Petitioner has presented no evidence which suggests he had a legitimate expectation of privacy at the trimmer springs location. Absent a showing that he had a legitimate expectation of privacy, Petitioner cannot demonstrate any reasonable probability of prejudice concerning his counsel's handling of the Trimmer Springs issue.

///

///

**18**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### b. Bonneyview

Plaintiff contends that counsel was ineffective with respect to challenging a search carried out at the Bonneyview property.[7] Petitioner cannot demonstrate prejudice, as the Ninth Circuit held that the court did not err in admitting evidence obtained from the Bonneyview search:

> The first search warrant was based on a tip that marijuana was cultivated at Bonneyview, which a police helicopter team confirmed. The helicopter team subsequently realized that they mistakenly identified the marijuana and tried to stop the ground team from executing the search warrant. The ground team did not hear the order to stop due to communications problems. The ground team entered the residence and, while securing the premises, found firearms and two marijuana plants outside the front door. The police asked for and received a second search warrant for Bonneyview. Long claims that the officers were dishonest or misleading in their affidavits to support the warrants, thus negating probable cause.
>
> The district court conducted a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978) (hearing held at the defendant's request if he makes a substantial preliminary showing that a search warrant affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement in a search warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause). Although the district court found some problems with the conduct of the police, the court denied Long's motion to suppress because the court found that the two marijuana plants were in plain view and that the second search warrant was untainted by the mistaken observations of the helicopter team.
>
> The district court did not err because (1) probable cause was still established when the affidavit supporting the first warrant is properly purged of intentionally or recklessly false statements, *United States v. Garza*, 980 F.2d 546, 551 (9th Cir. 1992); (2) the police made their mistakes in good faith and they attempted to correct them

---

[7] Petitioner also contends certain photographs linked to Bonneyview were doctored by authorities.  Petitioner presents no competent evidence of this assertion.

**19**

by contacting the magistrate judge by telephone; (3) the two marijuana plants were potted and in plain view. *United States v. Garcia*, 997 F.2d 1273, 1279 (9th Cir. 1993).

*Long*, 301 F.3d at 1100-1101.

### 8. Failure to Impeach Sayavong

Petitioner alleges his counsel did not conduct effective cross-examination or impeachment of Sayavong. Petitioner contends, *inter alia*, that Sayavong's testimony concerning when Petitioner moved to the united States was inaccurate. Petitioner's claim lacks merit. First, the record reflects that trial counsel cross-examined Sayavong extensively, including on the subject of when Petitioner moved to Fresno, and Sayavong conceded his memory was unclear regarding when Petitioner first arrived in Fresno. (RT at 1995). Second, there is no reasonable probability that, had counsel subjected Sayavong to more scrutinizing cross-examination, Petitioner would have received a more favorable outcome in his proceedings.

### 9. Reference to Petitioner as "Sang"

Petitioner complains that trial counsel referred to him as "Sang" during closing argument, a moniker several prosecution witnesses testified they used to refer to Petitioner. The record reflects that, when counsel made the reference Petitioner complains of, she was criticizing the version of facts testified to by a prosecution witness and was only referring to Petitioner as "Sang" in the context of the prosecution witnesses' version of events. (RT at 3002-3004). The reference was intended to point out a discrepancy in the witness's testimony. Petitioner cannot

establish the reference constituted deficient performance, nor can he establish prejudice.

## B. Prosecutorial Misconduct Claim

Petitioner contends that the Prosecution committed misconduct by charging him in connection with the Lincoln/West grow site, the charge on which Petitioner was acquitted.   In order for Petitioner to prevail, he must establish that the prosecution's bad faith decision to charge him amounted to a due process violation.  *See, e.g., Hovey v. Ayers*, 458 F.3d 892, 921 (9th Cir. 2006) (denying claim where no due process violation shown).   The fact that Petitioner was acquitted with respect to the Lincoln/West site is insufficient to establish that the charges could not have been brought in good faith by the Prosecution.   More importantly, Petitioner has not established that being charged for the Lincoln/West site so infected his trial with unfairness that his conviction amounts to a due process violation.  *Id.*  His acquittal on this count also belies his allegations he didn't receive a fair trial.

## C. Right to Witness Statements

Petitioner contends he was prejudiced by the Prosecution's refusal to turn over the grand jury testimony and interview records of various witnesses.   As the court has previously noted in the order denying Petitioner's motion for discovery, Petitioner has not responded to the competent evidence the Government has provided indicating that materials Petitioner seeks do not exist, and has not established any basis from which to infer that the materials sought, if they exist, are exculpatory. (Doc.   167 at 25-26, 32-

**21**

33).

## D. Interpreter Claim

Petitioner contends he was prejudiced by inaccurate interpretation by a court translator.  The Ninth Circuit rejected Petitioner's claim on direct appeal:

> Long claims that the court interpreter committed numerous inaccuracies in translating the testimony of government witness Khamsouk Vongprachanh such that his due process rights were violated, and that the district court erroneously denied Long's motion for a mistrial. The translator, who claimed to be skilled in both Hmong and Lao, apparently used both languages during the translation. Long claims that the translator's Lao skills were inadequate to interpret all that the witness said. Long also claims that his Sixth Amendment Confrontation Clause rights were violated because the inadequacies of the interpreter defeated his efforts to confront the witness during cross-examination.

> The district court expressed concern over the "suggestion that the interpreter has not interpreted all that the witness said, and that is something that he [the interpreter] himself has testified." Trial Tr. at 1846. While the district court judge was "thinking about changing the interpreter," Trial Tr. at 1852, he also stated that he did not

>> "believe that there has been the misinterpretation; rather, what I believe is that the interpreter, in effect, did not interpret and translate into English certain statements that he's acknowledged that the witness made that I didn't hear interpreted …so apparently everything that the witness said was not interpreted. Further, [defense counsel] if she wishes, can call the witness back in her case with an independent interpreter, a separate interpreter and ask him any questions that she feels are appropriate."

> Trial Tr. at 1853.

> The district court did not abuse its discretion in denying a mistrial. First, neither the district court nor the lawyers were fluent in either Hmong or Lao. There is no way to know what really happened between the witness and the interpreter, nor determine the adequacy of [**21]

22

the translation. While the general standard for interpreters requires continuous word-for-word translation, occasional lapses in the standard will not necessarily contravene a defendant's constitutional rights. United States v. Lim, 794 F.2d 469, 470-71 (9th Cir. 1986). The trial record shows that the district court tried to see that Long received adequate translation.

Second, Long has not demonstrated the nature of any exculpatory evidence which the witness possessed and could not communicate to the court due to the translator. We generally view interpreter problems within the context of an entire trial, *United States v. Anguloa*, 598 F.2d 1182, 1185 (9th Cir. 1979), and the government had other evidence and witnesses besides Khamsouk Vongprachanh to support its case against Long.

*Long*, 301 F.3d at 1095. Petitioner presents no new evidence or law sufficient to alter the prior analysis of his claim by the Court of Appeal.

## E. Ineffective Appellate Counsel Claims

Petitioner asserts that his appellate counsel was ineffective for failing to raise various claims of error. Petitioner cannot establish prejudice, as he has not identified any meritorious claim of error his appellant counsel should have raised. *See, e.g., Perry v. Hedgpeth*, 2011 U.S. Dist. LEXIS 86702 *34 (E.D. Cal. 2011) (noting that failure to identify meritorious claims precluded prejudice finding for claims of ineffective assistance of appellate counsel.)

### ORDER

For all the reasons stated, Petitioner's motion is DENIED on all grounds. IT IS SO ORDERED.

Dated:   **August 29, 2011**            _____/s/ Oliver W. Wanger_____

                                         UNITED STATES DISTRICT JUDGE

23